# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

BRADFORD PHILLIPS,         )
                                  )
     Petitioner,           )
                                  )
     v.                     )     CAUSE NO.: 3:11-CV-399-TLS
                                  )
SUPERINTENDENT, INDIANA     )
STATE PRISON,             )
                                  )
     Respondent.        )

## OPINION AND ORDER

The Petitioner, Bradford Phillips, a prisoner confined at the Indiana State Prison, filed a *Pro Se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1], challenging his 2004 Marion County criminal convictions for murder and carrying a handgun without a license. The Petitioner presents six grounds in his Petition for Writ of Habeas Corpus. In ground one, the Petitioner asserts that he was denied access to the state courts because he was indigent; in ground two, he asserts that the judge *pro tempore* who presided over his trial lacked jurisdiction to do so; in ground three, he argues that he was denied effective assistance of trial counsel; in ground four, he asserts that his appellate counsel was ineffective; in ground five, he contends that the jury in his case was "misled as to its ability to consider a lesser included offense along with the definition and application of 'sudden heat'"(Pet. 5, ECF No. 1); and in ground six, he alleges that the "State's key witness was intimidated to change her testimony" at trial. (*Id.*) The Respondent argues that most of the Petitioner's claims are barred by the doctrine of procedural default, and that his non-defaulted claims lack merit.

After the Respondent filed his Return to Order to Show Cause [ECF No. 6] along with attached exhibits and a Memorandum in Support [ECF No. 7], the Petitioner requested a stay and abeyance so that he could adjudicate an additional collateral state procedure. The Petitioner also

filed his Traverse [ECF No. 16] and a Memorandum in Support [ECF No. 17]. This Court denied

the motion for a stay, but afforded the Petitioner until January 5, 2013, within which to

supplement his Traverse if he wished. (Op. & Order, ECF No. 20.) The Petitioner has not

supplemented his Traverse, and the time in which to do so has expired.

## BACKGROUND

The Indiana Court of Appeals affirmed the Petitioner's convictions on June 15, 2005,

(Mem. Decision, ECF No. 6-7), and the Indiana Supreme Court denied transfer on August 11,

2005 (Appellate Case History, ECF No. 6-2 at 4). The Petitioner filed a petition for post-

conviction relief, which the Marion Superior Court denied on August 10, 2010. (Findings of Fact

and Conclusions of Law Denying Post-Conviction Relief, ECF No. 6-9.) On procedural grounds,

the Indiana Court of Appeals dismissed the Petitioner's appeal from the denial of post-conviction

relief on February 7, 2011 (Appellate Case History, ECF No. 6-3 at 3), and the Indiana Supreme

Court denied transfer on June 3, 2011 (*id.* at 4).

## ANALYSIS

This Petition is governed by the provisions of the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA), *see Lindh v. Murphy*, 521 U.S. 320, 336 (1997), which allows a

district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state

court judgment "only on the ground that he is in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2254(a). An application for habeas relief must meet

the requirements of 28 U.S.C. § 2254(d), which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that

2

was adjudicated on the merits in State court proceedings unless the adjudication of
the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

In reviewing a petition for federal collateral relief from a state court judgment of

conviction, this Court must presume as correct the facts as found by the state courts. 28 U.S.C.

§ 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ruvalcaba v. Chandler*, 416 F.3d 555,

559–60 (7th Cir. 2005). Moreover, the Petitioner has the burden of rebutting the presumption of

correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ruvalcaba*, 416 F.3d at

559–60.

The Indiana Court of Appeals affirmed the Petitioner's convictions on June 15, 2005.

(Mem. Decision, ECF No. 6-7.) As stated by the Indiana Court of Appeals on direct appeal, the

facts in the Petitioner's case are as follows:

During the early morning of February 18, 2002, Phillips and his girlfriend, Cherri
Daye ("Daye"), were standing outside of their home arguing. Freddie Powell
("Powell") happened upon the two as he was walking on the opposite side of the
street. Powell had been at a local bar with friends earlier. He stopped, remained on
the opposite side of the street, and inquired about the couple's argument. Powell and
Phillips exchanged harsh words. After Phillips's verbal confrontation with Powell,
Powell walked away and turned the corner.

Phillips walked away from Daye. He also turned the corner. Daye could not see
Phillips or Powell. A few minutes later, Daye heard three gunshots. Phillips had shot
Powell. Powell fell face down in the street and died at the scene.

Daye went in her house after hearing the gunshots. Later that morning, Daye
discovered a gun on her television. She spoke to Phillips. He told her that he had not
meant to hurt or shoot anyone. She assumed that Philips had placed the gun on the
television. She took the gun to her basement and hid it in a hairdryer. Then she
moved the gun and placed it under the stairs at a nearby vacant house. A few days

after the shooting, Daye told police the location of the gun.

(Mem. Decision 2–3, ECF No. 6-7.)

On direct appeal, the Petitioner argued that the trial court "committed fundamental error in giving the jury instructions on murder which denied [him] the right to have the jury consider whether he acted in sudden heat," that the trial court intimidated one of the witnesses, and that the trial court erred in sentencing him to an enhanced sentence. (Br. of the Appellant 1, ECF No. 6-4.) In his Petition for Transfer to the Indiana Supreme Court, the Petitioner raised only the jury instruction and witness intimidation claims. (Pet. for Transfer, ECF No. 6-8 at 3.)

In his petition for post-conviction relief, the Petitioner challenged the "validity of the judicial appointment of a judge *pro tempore*" and the effectiveness of his trial and appellate counsel. (Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, ECF No. 6-9 at 5.) The trial court denied the Petitioner relief, and the Indiana Court of Appeals dismissed his appeal without reaching the merits because he did not file a timely  motion to correct error in the trial court. (Appellate Case History, ECF No. 6-3 at 3.)


I.      **The Petitioner's Claim that the Trial Court Intimidated a Witness**

In ground six of his habeas petition, the Petitioner asserts that the "State's key witness was intimidated to change her testimony during the Petitioner's trial." (Pet. 5.) The Petitioner raised this issue in his direct appeal, in which he argued that "the trial court told the State to get Ms. Day 'straightened out' or 'heads were going to roll.'" The Petitioner asserted that as a result of this exchange, "Ms. Day changed her testimony." (Br. of the Appellant 7.)

The State called Daye as a witness at trial. Because she initially made statements at trial

inconsistent with statements she had made before trial concerning the gun, the deputy prosecutor asked the trial judge for permission to treat her as a hostile witness. Jurors were having trouble hearing Daye's testimony, so the trial judge "cautioned the deputy prosecutor that the witness should 'speak up.'" (Mem. Decision 12, ECF No. 6-7.) When Daye's testimony remained difficult to hear, the trial judge excused the jury and stated to the deputy prosecutor:

> Have a seat. . . [T]his is your case, you wanted a jury trial, you've got a witness that the jury can't even hear. And I'm not going to continually interrupt and tell her to speak up. I'm going to give you about ten minutes to get her straightened out, and then if we're not ready to present a case in front of the jury then heads are going to roll.

(*Id.* 13.) "[W]hen the trial reconvened, Daye testified that she had found the gun on the television, placed it in the hairdryer in the basement, then removed the gun, and placed it under the stairs at a nearby house. She also testified that she did not hear Powell use racial epithets." (*Id.*)

In his appeal, the Petitioner argued "that the trial court's statement to the prosecutor implied some drastic action if Daye did not cooperate, i.e, testify in a manner consistent with the State's theory of the case." (*Id.*) The Court of Appeals of Indiana, however, concluded that:

> While we cannot say that the trial court's choice of words was well conceived, for several reasons we discern no error here. First, Daye did not alter her testimony in the manner suggested by the State in the sidebar conversation. Second, there was no question that Phillips shot Powell with a gun; thus, whether anyone else had been in possession of the gun and whether Daye had seen the gun previously was of no moment. Third, in Phillips's statement to the police, heard by the jury, Phillips admitted that he gave the gun to Daye and that she walked toward the basement with the gun—essentially corroborating Daye's altered testimony about the gun. Fourth, the trial court did not comment upon Daye's credibility. Fifth, to the extent that the court's comments were related to Daye's testimony, the comments were directed to the inability of the jury to hear Daye's testimony. Sixth, prior to the trial court's statement, Daye had not testified whether she heard Powell use racial epithets toward her and Phillips; accordingly, the record is utterly devoid of any indication that [the] trial court's statement influenced Daye to alter her testimony.

(*Id.* 13–14.) In support of its decision, the Indiana Court of Appeals cited *Lampkins v. State*, 778 N.E.2d 1248, 1251 (Ind. 2002), which in turn cited *Webb v. Texas*, 409 U.S. 95, 98 (1972) (finding a due process violation in a trial judge's threatening remarks that were directed at a single defense witness, who was effectively driven from the witness stand). In *Lampkins*, the Indiana Supreme Court recognized the principle set forth in *Webb* that "a trial court judge violates a defendant's due process rights if the judge exerts influence on a witness that controls the testimony of the witness or drives the witness from the stand." *Lampkins*, 778 N.E.2d at 1250. The Indiana Court of Appeals then analyzed the facts in the Petitioner's case and held that the trial court's statement had not influenced Daye to alter her testimony.

A federal court may grant habeas relief if a state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Accordingly, this Court must determine whether the state court's application of *Webb* was reasonable. The Indiana Court of Appeals's finding that the trial judge's statement had not influenced Daye to alter her testimony is consistent with the evidence, and is not an unreasonable application of clearly established federal law. A state court's application of federal constitutional law will be upheld "where it is 'at least minimally consistent with the facts and circumstances of the case.'" *Rice v. McCann*, 339 F.3d 546, 549 (7th Cir. 2003) (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)). Accordingly, because the Indiana Court of Appeals did not unreasonably apply federal law in denying this claim, the Court will deny the Petitioner's request for habeas relief on the sixth ground of his Petition.

**II.      The Petitioner's Claim that the "Sudden Heat" Instruction Confused the Jury**

In ground five of his Petition, the Petitioner asserts that the trial court erred by instructing the jury in a confusing manner as to "sudden heat." (Pet. 5.) This issue was raised in the Petitioner's direct appeal, where he argued that the instructions were "improperly worded." (Br. of the Appellant 7.)  The Indiana Court of Appeals found that "the defense did not object to the instructions at trial. The failure to object to a jury instruction results in a waiver on appeal, unless giving the instruction constituted fundamental error." (Mem. Decision 7,  ECF No. 6-7 (citing *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000)).) After analyzing the jury instructions in the context of the facts presented at trial, the Indiana Court of Appeals found that the jury instructions "were not so confusing so as to constitute fundamental error, and did not deprive Phillips [of] his right to due process." (Mem. Decision 11, ECF No. 6-7.)

A procedural default occurs when the state court addressing the petitioner's claim disposed of it on an adequate and independent state law ground. *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (citing *Coleman v. Thompson*, 501 U.S.722, 729 (1991)). Federal courts will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729; *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999) (citing *Coleman*). The independent and adequate state law ground doctrine applies "to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–30; *Franklin*, 188 F.3d at 881. The independent and adequate state law ground may be based either upon substantive state law or upon a violation of state procedural rules. *Coleman*, 501 U.S. at 729; *Harris v. Reed*, 489 U.S. 255, 260–61 (1989).

The Respondent asserts that the Petitioner's jury instruction claim is barred by procedural

7

default because he did not comply with Indiana's contemporaneous objection rule. "Indiana has a procedural rule requiring that an objection to a jury instruction be made in the trial court in order to preserve the issue for appeal. Absent such an objection, the issue is waived and further review is barred." *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993). When a "state court declines to review an issue not properly preserved, the state court decision rests upon a state law ground that is both 'independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman*, 501 U.S. at 729). "Nonetheless, in Indiana, when a trial court commits a 'fundamental error,' a court may still grant relief despite waiver of the issue." *Willis*, 8 F.3d at 560 (citing *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987)).

In *Willis*, the Seventh Circuit conducted a lengthy examination of the caselaw dealing with Indiana's fundamental error doctrine as it relates to the federal procedural default doctrine. The Seventh Circuit concluded that, unlike some states, "Indiana does not equate federal constitutional error with fundamental error. Like New Mexico, Indiana mandates review on the merits of fundamental rights claims only when the denial of the right 'gives rise to a question of fundamental error as *defined by state law*.'" *Willis*, 8 F.3d at 567 (quoting *Gutierrez v. Moriarty,* 922 F.2d 1464, 1469 (10th Cir. 1991), *cert. denied*, 502 U.S. 844 (1991)) (emphasis supplied by the Seventh Circuit). The Seventh Circuit concluded that "the determination of the Indiana appellate court, that no fundamental error resulted from the instruction, rests on an independent and adequate state ground. We therefore hold that habeas review in the federal courts is, as the district court determined, precluded." *Willis*, 8 F.3d at 567.

Accordingly, because the Indiana Court of Appeals determined that no fundamental error resulted from the instructions at trial, the Petitioner has procedurally defaulted his jury instruction claim, and this Court is precluded from considering it.

A habeas petitioner can overcome a procedural default by showing both cause for failing

8

to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" that prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). The Petitioner does not assert in his Traverse that some factor external to the defense prevented him from objecting to the instructions at trial. He does not suggest that "the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Id.* (citations and quotation marks omitted). Accordingly, he has not shown cause or prejudice for his procedural default of the jury instructions claim.

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, a petitioner must establish that "constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The Petitioner has not argued that this Court's failure to consider whether the instructions at his trial were confusing would result in a fundamental miscarriage of justice or that he is actually innocent of the charge against him.

Accordingly, because the Petitioner has failed to overcome his procedural default of the jury instruction claim, this Court is precluded from considering it, and will deny habeas relief with respect to the fifth ground raised in the Petition.

**III.    The Petitioner's Claim Presented in Ground One of his Petition for Writ of Habeas Corpus**.

In ground one of his Petition, the Petitioner asserts that he was denied access to the Indiana appellate courts based on his indigency. He states that he filed a timely notice of appeal, but that the "Indiana Court of Appeals dismissed Petitioner's appeal, sua sponte, due to his Motion to Correct Error being filed past the deadline" and that he therefore forfeited his appeal. (Pet. 3.) He insists that apart from his indigency on September 7, 2010, he "would have been able to appeal his Post-Conviction Relief and exhaust the issues contained therein." (*Id.*)

This ground does not directly impact the Petitioner's conviction or sentence, and it is not a freestanding claim upon which he can receive relief under § 2254. The Petitioner also asserts that the facts stated in ground one constitute cause and prejudice, excusing his procedural default of the issues he sought to raise in his appeal. This Court will address that argument below, in the portion of this Opinion and Order dealing with the substantive claims raised in his appeal of the denial of his petition for post-conviction relief.

**IV.    The Petitioner's Claims Presented in Grounds Two, Three, and Four of his Petition for Writ of Habeas Corpus**

In ground two of his Petition, the Petitioner asserts that the judge *pro tempore* who presided over his trial lacked jurisdiction to do so; in ground three, he argues that he was denied effective assistance of trial counsel; and in ground four, he asserts that his appellate counsel was ineffective. These grounds were presented to the state court in the Petitioner's petition for post-conviction relief. But, as discussed above, the Marion Superior Court denied the request for post-conviction relief. (Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, ECF No. 6-9.)

10

The Petitioner then appealed the denial of his petition for post-conviction relief and the Indiana Court of Appeals ordered him to show cause why his appeal should not be dismissed because it appeared that he "did not timely file his motion to correct error in the trial court." (Appellate Case History, ECF No. 6-3 at 3.) After reviewing the Petitioner's response, the Indiana Court of Appeals dismissed the appeal with prejudice on procedural grounds, without ruling on the merits of the claims presented. (*Id.*) The Respondent argues that the Indiana Court of Appeals dismissed the Petitioner's appeal because of his failure to file a timely motion to correct error, and the Petitioner has therefore procedurally defaulted the three claims contained in his petition for post-conviction relief.

The Indiana Court of Appeals dismissed the Petitioner's appeal for failing to adhere to a state procedural rule, Indiana Appellate Rule 9(A), which requires that a motion to correct error be timely filed in order to preserve the right to appeal. Indiana Trial Rule 59(C) states that a motion to correct error "shall be filed not later than thirty (30) days after the entry of a final judgment is noted in the Chronological Case Summary." Under Indiana law, "when a party transmits by an independently verifiable means (like registered mail or third-party carrier), the filing is deemed to have occurred upon mailing or deposit. When other means are used [i.e. regular mail], filing occurs on the date the filing is in the hands of the clerk." *Dowell v. State*, 922 N.E.2d 605, 609 (Ind. 2010). Here, it is undisputed that the Petitioner's motion to correct error did not arrive in the hands of the clerk until more than thirty days after the entry of final judgment on the petition for post-conviction relief. Because the Indiana Court of Appeals resolved the Petitioner's appeal from the denial of his petition for post-conviction relief based on an independent and adequate state law ground, grounds two, three, and four are procedurally defaulted unless the Petitioner can show cause and prejudice for his default or establish a

11

fundamental miscarriage of justice.

In his Traverse, the Petitioner does not assert a fundamental miscarriage of justice, but he does present a cause and prejudice argument. (Mem. in Supp. of Traverse 10–13, ECF No. 17.) The Petitioner argues, as he does in ground one of his habeas petition, that the Court of Appeals of Indiana incorrectly and unreasonably applied clearly established federal law in concluding that his motion to correct errors from the dismissal of his post-conviction petition was not timely filed.

Pursuant to the "mailbox" rule enunciated by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270–71 (1988), a *pro se* prisoner's submissions in federal court are deemed "filed" at the moment they are delivered to prison authorities for forwarding to the court. The decision in *Houston v. Lack*, however, was not based on the Constitution or laws of the United States; rather, the Supreme Court was construing a federal rule of appellate procedure. Because the Supreme Court based its decision on the Federal Rules of Appellate Procedure, rather than on the Constitution or laws of the United States, *Houston* does not require state courts to follow the federal mailbox rule. Indiana has adopted its own rule, under which a party's submission that is mailed to the trial court is deemed filed on the date of mailing only when it is sent by an independently verifiable means such as certified or registered mail.

The Petitioner also argues that his response to the Indiana Court of Appeals met the requirements for the prison mailbox rule as stated in *Dowell v. State*. In *Dowell*, the Indiana Supreme Court "expressly adopted" the prison mailbox rule for filings under the appellate rules, with the stipulation that a prison litigant "provide reasonable, legitimate, and verifiable documentation." 922 N.E.2d at 606. The Petitioner provided the Indiana Court of Appeals with an affidavit from the caseworker who received his filing on Tuesday, September 7, 2010, and

12

took it to the prison mail room [ECF No. 6-10 at 11]; an affidavit from the correctional casework manager stating that the Petitioner's inmate trust fund account balance was $0.08 on September 7, 2010 [ECF No. 6-10 at 12]; his own affidavit explaining that his motion to correct error was ready to mail on Friday, September 3, but because of the Labor Day weekend no one was available to receive it until September 7; and various other pieces of documentary evidence. The Indiana Court of Appeals dismissed the Petitioner's appeal without comment on these materials. (Appellate Case Summary, ECF No. 6-3 at 3.) The Petitioner argues, implicitly, that the Indiana Court of Appeals failed to apply *Dowell*, resulting in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Court finds, however, that the Petitioner is misreading the holding in *Dowell*. While the *Dowell* court applied the prison mailbox rule to filings under Indiana's Rules of Appellate Procedure, it found that a prison litigant must file a motion to correct error, governed by the Indiana Rules of Trial Procedure, according to Rule 5(F). Under that Rule, non-certified mail sent to the trial court is not considered filed until received by the clerk of court. *Dowell*, 922 N.E.2d at 609. Accordingly, although it appears that the Petitioner included "reasonable, legitimate, and verifiable documentation" that would have met the *Dowell* standard if he had been filing a notice of appeal, because he was filing a motion to correct error under the Indiana Rules of Trial Procedure it does not appear that the Indiana Court of Appeals made an unreasonable determination.

The Petitioner also argues that, due to his status as a pauper, he was unable to file his motion to correct error from the denial of post-conviction relief by certified mail, thereby having it deemed filed on the date it was mailed pursuant to Indiana Trial Rule 5(F). The Petitioner states that on September 7, 2010, he mailed his motion to correct error to the trial court, to meet a filing deadline of September 9, 2010, but that "Indiana Department of Correction policy and

practices do not permit prisoners to utilize certified mail services if they are indigent or have insufficient funds to cover the costs of such services." (Pet. 3.) The Petitioner asserts that because he could not mail his motion to correct error by certified mail, he lost the benefits of Indiana's mailbox rule, which requires a filing to be mailed by certified mail. Because he did not have the benefit of the mailbox rule, and because his motion to correct error was not actually received by the trial court clerk until after the deadline, his appeal was dismissed as untimely.

The Respondent argues that the Petitioner cannot excuse his procedural default because the documents he submitted to the Indiana Court of Appeals to show cause why his appeal should not be dismissed as untimely establish that he was aware of the departmental policy that required an inmate to pay for the costs of certified mail. (Mem. in Supp. of Return to Order to Show Cause 8, ECF No. 7.) This policy expressly states that the Department of Correction will provide regular non-certified legal mail at no cost to inmates who are unable to pay the cost of postage, but that inmates must pay for certified mail regardless of how much money they have in their accounts. (Offender Access to the Courts ¶ 7, ECF No. 6-10 at 17). The Respondent argues that the Petitioner's inability to adhere to the requirements of Indiana Department of Correction policy and the Indiana Trial Rules does not excuse his default.

Cause sufficient to excuse procedural default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray*, 477 U.S. at 492. The Petitioner argues that the Indiana Department of Correction's failure to provide him with free certified mail constituted an external impediment that prevented him from being able to pursue an appeal from the denial of his petition for post-conviction relief. But the Petitioner could have avoided this problem by mailing his motion to correct error in sufficient time to have it timely filed with the trial court. This was not a problem external to the defense, but a problem of the Petitioner not getting his motion to correct error ready before the deadline.

14

Consequently, the Petitioner has not shown cause for the procedural default, and because he cannot excuse his procedural default of grounds two, three, and four of his Petition, habeas review is precluded on these grounds.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant the Petitioner a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted).

When the court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* To obtain a certificate of appealability, the petitioner must satisfy both components. *Id.* at 485.

For the reasons stated in this Opinion and Order, this Court concludes that the Petitioner is not entitled to relief because his claims are either barred by the doctrine of procedural default or because they are substantively without merit. The Petitioner has not established that jurists of reason could debate the correctness of these rulings or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

15

**CONCLUSION**

For the foregoing reasons, the Court: 1) DENIES the Petitioner Under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1]; 2) DIRECTS the Clerk to

close this case; and 3) DENIES the Petitioner a certificate of appealability.

SO ORDERED on April 24, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

16